UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLENN C. RITZMA,

    Plaintiff,

  v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO. C05-1609-JCC

ORDER

This matter comes before the Court on Plaintiff's application for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") (Dkt. No. 3), the Report and Recommendation of United States Magistrate Judge Mary Alice Theiler ("R&R") (Dkt. No. 26), and Plaintiff's Objections to the R&R (Dkt. No. 30). Having reviewed the materials submitted by the parties, and finding that oral argument is not necessary, the Court hereby finds and rules as follows.

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits in February 2002, alleging chronic urticaria, headache and visual problems, history of back problems, and seizures occurring in 1996 and 1999. (AR 86.) The claim was denied initially and on reconsideration. (AR 46.) ALJ Edward Nichols held a hearing on October 8, 2004, and took testimony from both the Plaintiff and a vocational expert,

ORDER – 1

Leta Berkshire. (AR 423–457.) On December 9, 2004, ALJ Nichols concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 31–38.) Plaintiff appealed, and the Appeals Council denied review on June 16, 2005. (AR 20–22.) On October 5, 2005, after considering additional evidence, the Appeals Council found no reason to reopen or change its decision, making the ALJ's decision the final decision of the Commissioner. (AR 6–7.) Plaintiff then filed this appeal, and oral argument was held on May 4, 2006. On May 9, 2006, Magistrate Judge Mary Alice Theiler issued her R&R, recommending that this Court affirm the Commissioner's decision. (Dkt. No. 26.) Plaintiff filed his Objections to the R&R on June 5, 2006, claiming that the ALJ (1) failed to properly evaluate the severity of and limitations caused by his chronic idiopathic urticaria and (2) did not provide a sufficiently clear residual functional capacity assessment in his decision. (Pl.'s Obj. 2.) Defendant filed her Response to Plaintiff's Objections on June 23, 2006. (Dkt. No. 31.)

Plaintiff alleges that he became disabled on November 19, 1999. Therefore, the relevant period at issue is from November 19, 1999, through December 31, 1999, the date the Plaintiff was last insured for Disability Insurance benefits. (AR 32.)

## II.  STANDARD OF REVIEW

This Court reviews the record *de novo* when considering objections to a magistrate judge's R&R. *See* 28 U.S.C. § 636(b)(1). A denial of disability benefits may be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see also Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence means more than a scintilla, but less than a preponderance, *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999)), or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

ORDER – 2

for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 750). If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld. *Burch*, 400 F.3d at 679; *see Andrews*, 53 F.3d at 1039–40.

### III.  ANALYSIS

Having conducted a *de novo* review of the R&R, Objections to the R&R, Defendant's Response to Plaintiff's Objections, the record, and applicable legal authorities, the Court finds that the ALJ's decision was supported by substantial evidence and was not reached in legal error. In his Objections, Plaintiff raises substantially the same arguments that were raised before Magistrate Judge Theiler. Plaintiff argues that the ALJ erred by (1) not fully and fairly developing the record; (2) engaging in interpretation of medical evidence that was beyond his expertise; (3) not giving sufficient reasons for rejecting the opinions of Plaintiff's treating physician; (4) not providing sufficient reasons for rejecting Plaintiff's testimony; and (5) not providing a sufficiently clear residual functional capacity assessment in his decision. (Pl.'s Obj. 1–13.)

#### A.  Urticaria

##### 1.  Developing the Record

Plaintiff contends that the ALJ did not fully develop the record when he did not obtain the dermatological records Plaintiff mentioned in his hearing testimony. (Pl.'s Obj. 8–9.) "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam)). However, "an ALJ's duty to develop the record further is triggered *only* when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (emphasis added) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

The ALJ addressed the medical evidence in the record in determining the onset date of Plaintiff's urticaria, and determined that it did not occur before January 2000:

ORDER – 3

> In October 2002 the claimant alleged that he has had severe chronic uticaria[1] since "late 1999" (Exhibit 13E). However, this condition was never mentioned by the claimant or any physician during the relevant period. The first time he mentioned "itching" symptoms was on January 28, 2000, which is *after* the date of last insured. (Exhibit 9F, pp. 45–46). It was not until after that visit that Dr. Tocher began work-up and provided any restrictions based on uticaria. He indicates that *the claimant told him* that he had a problem with "itching" for years. However, the medical evidence of record does not reflect that the claimant ever complained about or even mentioned this problem until the January 2000 evaluation. He did not include this impairment on the initial health history report he completed for Dr. Tocher on November 24, 1999 (Exhibit 9F, pp. 56–7).

(AR 35–36.) While Plaintiff contends that his visit to Dr. Buckley on December 14, 1999, complaining of "1 day of painful red bumps over his left ankle and right shin" (AR 292), demonstrates that he had urticaria symptoms prior to December 31, 1999, the bumps were diagnosed as an allergic reaction to sulfa medication, and not urticaria. (AR 291–92.) As Magistrate Judge Theiler noted:

> Plaintiff fails to support his contention that a single day of red bumps diagnosed as an allergic reaction to medication is in any way related to his urticaria. Instead, the evidence supports a reasonable conclusion that there was no basis to infer an onset date prior to Dr. Tocher's January 28, 2000 medical examination, and that evidence as to onset date was unambiguous. (R&R 12.)

Because the evidence was neither ambiguous nor inadequate to allow for proper evaluation, the ALJ's duty was not triggered, and therefore the ALJ did not err by not requesting the dermatological records. Additionally, Magistrate Judge Theiler noted that simply because Plaintiff suffered from skin issues in the past does not mean those issues were disabling, and the fact that Plaintiff did not pursue the issue of the duty to develop the record further even though he submitted other, later documents after the ALJ closed the record. (R&R 14–15; See AR 36, n.1.)

### 2. Medical Expert

Plaintiff asserts that the ALJ engaged in interpretation of medical evidence that was beyond his expertise, and that the ALJ should have called a medical expert to assist him in evaluating the evidence of the case. (Pl.'s Obj. 7–8.) "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Armstrong v. Comm'r of the Soc. Sec. Admin.*, 160

---

[1] Although spelled "uticaria" by the ALJ, the accurate spelling is "urticaria."

ORDER – 4

F.3d 587, 589 (9th Cir. 1998) (citing Social Security Regulation ("SSR") 83-20 (1983)). "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor *when* onset must be inferred." *Armstrong*, 160 F.3d at 589–90 (emphasis added). As noted *supra*, there is no ambiguity regarding the onset of Plaintiff's urticaria. The ALJ's determination that Ritzma was not disabled prior to December 31, 1999, was supported by substantial evidence. Because of this evidence, the ALJ was not required to call a medical expert to establish an onset date.

Plaintiff also contends that the magistrate judge recommends affirming based on facts or reasoning not cited by the ALJ in regards to finding that the report of a skin condition in December 1999 was not evidence of CIU and that Plaintiff's statements to Dr. Tocher in January 2000 were not evidence that Plaintiff's CIU was severe prior to December 1999. (Pl.'s Obj. 7–8.) The Court disagrees. The ALJ addressed the bumps on Plaintiff's legs in December 1999 as an allergic reaction to a medication: "The claimant complained of chronic back pain and bumps on his left ankle and right shin. Dr. Buckley diagnosed erythema nodosum related to the sulfa medication." (AR 33.) The ALJ also discussed Dr. Tocher's statements in January 2000:

> The first time [Plaintiff] mentioned "itching" symptoms was on January 28, 2000, which is *after* the date of last insured (Exhibit 9F, pp. 45-46). It was not until after that visit that Dr. Tocher began work-up and provided any restrictions based on uticaria. He indicates that *the claimant told him* that he had a problem with "itching" for years. However, the medical evidence of record does not reflect that the claimant ever complained about or even mentioned this problem until the January 2000 evaluation. He did not include this impairment on the initial health history report he completed for Dr. Tocher on November 24, 1999 (Exhibit 9F, pp. 56-57). (AR 35–36.)

### 3. Opinions of Plaintiff's Physician

Plaintiff contends that the ALJ did not provide sufficient reasons for rejecting Dr. Tocher's statement in his October 6, 2004 declaration that Plaintiff had experienced CIU since November 1999. (Pl.'s Obj. 9.) The ALJ is responsible for resolving any conflicts in medical testimony. *Andrews*, 53 F.3d at 1039; *Magallanes*, 881 F.2d at 750. Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830

ORDER – 5

1  (9th Cir. 1995) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

2  The ALJ addressed the October 2004 statement with the following:

> I give little weight to the written question and answer statement Dr. Tocher provided in October 2004 (Exhibit 19F). First, he admits that he began treating the claimant for back pain in November 1999 and "*he then developed* idiopathic uticaria and complex headaches" (Exhibit 19F, p. 1). This indicates that the condition became severe *after* he began treating claimant for it, which according to his treatment notes was in 2000. He stated that the condition has "been going on for 4 years," which also corresponds with 2000. However, any statement about the history of the condition is speculative because it is based on the subjective history given by the claimant, and not objective medical evidence. In the statement, Counsel has him relate the uticaria back to when he first started treating claimant. However, this is clearly inconsistent with his treatment notes at Exhibit 9F, which renders the opinion less persuasive.

(AR at 36.) Because there were contradictions within Dr. Tocher's statements and treatment notes, and the ALJ is responsible for resolving any conflicts in medical testimony, this Court finds that the ALJ provided clear and convincing reasons for disregarding Dr. Tocher's statement that Plaintiff had suffered from CIU since November of 1999.

### 4.     **Plaintiff's Testimony**

Plaintiff asserts that if the Court concludes that the ALJ erred at step two when he determined that Mr. Ritzma's impairment was not severe, it would be necessary to remand for further assessment of Plaintiff's credibility. (Pl.'s Obj. 11.) This Court finds that the ALJ did not err, and therefore there is no need to remand to re-assess Plaintiff's credibility.

### B.     **Residual Functional Capacity Assessment**

Plaintiff contends that the ALJ erred by not defining the term "occasional flares" when he found: "[The vocational expert] testified that any sedentary job would accommodate his occasional flares and occasional absenteeism. I concur and find that the claimant's past relevant work does not require the performance of work-related activities precluded by his residual functional capacity (20 CFR § 404.1565)." (AR 37.) (Pl.'s Obj. 11–13.)

Plaintiff testified to the following:

Q    Okay. Mr. Ritzma, the question arises this has been going on for years you've been having

ORDER – 6

|   |   |   |
|---|---|---|
| 1 |   | these things when you were drinking and not.  How is it you worked with it back when |
| 2 |   | you were working?  What would happen? |
| 3 | A | Well it's been getting increasingly worse. |
| 4 | Q | I understand that. |
| 5 | A | Right. |
| 6 | Q | But you still had them when you were working? |
| 7 | A | Um-hum. |
| 8 | Q | Well, how did you deal with that?  Just take a couple days off and it would go away or |
| 9 |   | what?  What happened? |
| 10 | A | Well, you — it — well first of all being in sales and marketing there are some, you know, |
| 11 |   | latitude sometimes, but typically, that would be the case. |
| 12 | Q | You just would what take a few days off until it cleared up? |
| 13 | A | Yeah, probably not a few days in a row because I really couldn't get away with that but it |
| 14 |   | wasn't — but I didn't have — it might happen once a month.  (AR 444–445.) |

"If the hypothetical does not reflect all the claimant's limitations, [the Ninth Circuit] ha[s] held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citing *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988)).  The ALJ presented the hypothetical to the vocational expert based on Plaintiff's testimony as:

> Three years of college.  And past work is described.  In terms of impairments, certainly alcohol use is currently in remission, the back as mentioned, this urticaria is mentioned.  I think that's where we're going to stop when he was insured.  And I think sedentary, problem some of light exertionally.  With non-exertional problems, occasional flare to this urticaria which would lead to some absenteeism.  Now I think it was not as bad as such that he could work around it or come in later or go in at different times to deal with it in the past.  But let's start with that.  So any past work an option?

(AR 454.)  Also, as the magistrate judge referenced, the ALJ indicated that the plaintiff's testimony regarding specific times and dates was evasive and vague.  (R&R 23; AR 36.)  Therefore, this Court

ORDER – 7

agrees with the magistrate judge's determination that the term "occasional flares" accurately captures plaintiff's testimony as a whole in regards to his impairments and absenteeism. (R&R 23).

IV.   **CONCLUSION**

For the foregoing reasons, the Court hereby ADOPTS the Report and Recommendation and AFFIRMS the decision of the Commissioner. The Clerk is directed to send copies of this Order to all counsel and to Judge Theiler.

SO ORDERED this <u>24th</u> day of August, 2006.

_____
UNITED STATES DISTRICT JUDGE

ORDER – 8